UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GODWIN PUMPS OF AMERICA, INC.,

        Plaintiff,

v.                                        Case No.  8:11-cv-580-T-24 AEP

MACKEY LEE RAMER,

        Defendant.

_____/

## ORDER

    This cause comes before the Court on Plaintiff Godwin Pumps of America, Inc.'s

("Godwin") motion for preliminary injunction pursuant to Rule 65(b) of the Federal Rules of

Civil Procedure.  (Doc. No. 3).  Defendant Mackey Lee Ramer ("Ramer") has filed a response in

opposition (Doc. No. 16) to which Godwin has filed a reply (Doc. No. 21).

## I.    Background

    On March 18, 2011, Godwin filed a complaint against its former employee, Ramer,

alleging breach of contract (Count I), violation of the Florida Uniform Trade Secrets Act (Count

II), tortious interference with contractual relations (Count III), and unjust enrichment (Count IV),

in connection with Ramer's resignation from Godwin and subsequent employment with National

Pump and Compressor, Inc. ("NPC").[1]  (Doc. No. 1).  Simultaneous to the filing of the

complaint, Godwin filed the instant motion for preliminary injunction.  (Doc. No. 3).

    The following facts are undisputed unless noted otherwise.  Godwin is a New Jersey

---

[1]On April 8, 2011, Ramer filed a motion to dismiss Counts III and IV of the complaint (Doc. No. 11), which the Court granted on June 3, 2011 (Doc. No. 24).

corporation that manufactures, rents, and sells pumps and pumping systems and accessories. (Doc. No. 1 at ¶¶ 2, 7).  Godwin has a network of more than 400 distributor locations worldwide and maintains a fleet of 6,000 portable pumps and 3,200 pieces of related equipment for use in construction, dewatering, mining, drinking supply, and water/wastewater bypasses.  *Id.* at ¶ 7. In January of 2008, Godwin hired Ramer as a Sales Engineer/Sales Representative in Godwin's Lakeland, Florida office.  *Id.* at ¶¶ 15-16.  In Ramer's position as Sales Engineer/Sales Representative, he was responsible for territories including Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties, as well as other counties in Florida where known or potential business opportunities would arise.  *Id.* at ¶ 16. Ramer's job responsibilities entailed supporting existing customers with pumping needs and developing business opportunities with current and prospective customers for sales and rentals of industrial pumps and pumping systems.  (*Id.* at ¶ 17; Ramer Aff. at ¶ 5).[2]

 As a condition of Ramer's employment with Godwin, he was required to enter into a Confidentiality and Non-Competition Agreement (the "Agreement").  (Doc. No. 1 at ¶ 19; Ramer Aff. at 7).  By signing the Agreement, Ramer agreed, among other things, in Section 1 of the Agreement:

> To keep secret and retain in the strictest confidence all confidential information of the Company learned by Employee heretofore or hereafter, and not to disclose such Confidential Information to anyone outside of the Company, either during or after his . . . employment by the Company, except in the course of performing his . . . duties hereunder or with the Company's prior express written consent.[3]

---

[2]Ramer's affidavit is filed at docket number 15.

[3]For purposes of the Agreement, "Confidential Information" includes, but is not limited to, "(a) the identities of the Company's customers and customer contacts as well as the identities of the active prospective customers of the Company. . .; (b) the identity, authority and

2

(Doc. No. 1, Exh. A at ¶ 1.1).  Under Section 2 of the Agreement, Ramer agreed, among other things, that for a period of two years after his termination of employment with Godwin, he would not directly or indirectly:

> (a) enter the employ of or render any services to any person, firm or corporation specializing in the manufacture, sale and rental of pumping systems . . .; or (b) engage in any Business in competition with the Company on Employee's own account.

*Id.* at ¶ 2.1.  Also under Section 2 of the Agreement, Ramer agreed that for a period of two years following his termination of employment with Godwin, he would not:

> [S]olicit, seek to divert or assist any customer or active prospective customer[4] of the Company with respect to any Business substantially similar to that engaged in by the Company during Employee's employment.
>
> [S]olicit, hire or retain, or seek to hire or retain, any employee of the Company or individual retained by the Company during the six (6) month period preceding Employee's termination of employment with the Company.

*Id.* at ¶¶ 2.2-2.3.

On February 17, 2011, Ramer resigned his employment with Godwin and became employed by Godwin's competitor, National Pump and Compressor, Inc. ("NPC").[5]  (Doc. No. 1

---

responsibilities of key contacts at each such customer or active prospective customer; (c) the contents of any customer or consultant contracts, current and anticipated customer requirements or bids; (d) the Company's financial information . . .; (e) information relating to the Company's manufacturing, inventions, engineering and research and development; (f) all internal memoranda . . .; (g) computer software programs . . .; (h) pricing policies, price lists, market studies, business plans, operational methods, marketing plans or strategies."  (Doc. No. 1, Exh. A at ¶ 1.3).

[4]The Court interprets "active prospective customer" to mean customers with whom Ramer had "substantial dealings on [Godwin's] behalf while in [Godwin's] employ. *Solari Indus. v. Malady*, 264 A.2d 53, 61 (N.J. 1970).

[5]NPC describes itself as "a leading provider of pumps, compressors, dryers and related equipment for the industrial, petrochemical, refinery, construction, marine, oilfield, municipal, environmental and mining industries."  (Doc. No. 1, Exh. B).  Ramer describes NPC as a

at ¶ 31; Ramer Aff. at ¶ 15).  On February 22, 2011, Godwin sent Ramer a letter reminding him of the Agreement, noting his employment with NPC was a direct violation of the Agreement and requesting a written commitment from Ramer by March 4, 2011 that he would abide by the terms of the Agreement.  (Doc. No. 1 at ¶ 37).  As of the filing of the instant motion, response in opposition, and reply, Ramer has not provided the requested written commitment and remains employed by NPC.

## II.     Discussion

Godwin moves this Court to preliminarily enjoin Ramer from violating the Agreement and the Florida Uniform Trade Secrets Act. ("FUTSA").  Specifically, Godwin asks the Court to enjoin Ramer from working for NPC and from disclosing Godwin's confidential, proprietary and trade secret information.  Godwin argues that Ramer breached the Agreement when he joined NPC, and that he will continue to breach the Agreement if he is not ordered to stop working for NPC.  Godwin argues that, absent a preliminary injunction, it will suffer irreparable harm from Ramer's breach of the Agreement and violation of FUTSA.[6]

The decision to grant or deny a preliminary injunction is within the discretion of the district court.  *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997).  In determining whether a preliminary injunction should issue, the district court must find that the moving party has demonstrated: (1) a substantial likelihood of success on the merits; (2)

---

company that "provides pumps for dewatering to the mining, environmental, and construction industries." (Ramer Aff. at ¶ 15).

[6]Godwin also argues that, absent a preliminary injunction, it will suffer irreparable harm from Ramer's tortious interference with Godwin's contractual relations.  However, the Court dismissed Godwin's claim for tortious interference with contractual relations (Doc. No. 24), so the Court will not consider Godwin's argument relating to this claim.

irreparable injury absent an injunction; (3) the threatened injury outweighs whatever damage an injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.[7]  *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009); *see also MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1240 (11th Cir. 2005); *Carillon Imps., Ltd.*, 112 F.3d at 1126.  "A preliminary injunction is an extraordinary and drastic remedy; a district court should not issue a preliminary injunction unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Trueblue, Inc. v. Dyn*, 2010 WL 1223895, at *2 (M.D. Fla. March 2, 2010) (citing *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr*, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003)).

**A.     Substantial Likelihood of Success on the Merits**

  *1.     Breach of the Agreement (Count I)*

In order to determine whether Godwin has a substantial likelihood of success on the merits of its claim that Ramer breached the Agreement, the Court must first determine which state's law governs the interpretation of the Agreement.  The Agreement contains a governing law provision, which provides in part, "[t]his Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New Jersey, without reference to principles

---

[7]Ramer argues that this Court should not reach an analysis of whether Godwin has met the prerequisites for a preliminary injunction, because his performance under the Agreement is excused based on his allegation that Godwin breached his compensation agreement.  (Doc. No. 16 at 4-5).  However, Ramer has not provided the Court with evidence of an actual compensation agreement; rather, he has only provided the Court with an offer of employment letter.  (Doc. No. 15, Exh. A).  Moreover, except for his own assertion, Ramer has not provided the Court with any evidence of a breach of his alleged compensation agreement.  Therefore, Ramer's performance under the Agreement is not excused based on his unsupported assertion that Godwin breached his compensation agreement.  *See N. Am. Prods. Corp. v . Moore*, 196 F. Supp. 2d 1217, 1225-26 (M.D. Fla. 2002) (holding that a defendant's unsupported assertions of breach of contract are insufficient to invalidate an associated non-competition agreement).

5

of conflicts of law." (Doc. No. 1, Exh. A at ¶ 7.1).  In Florida, courts will generally "enforce[]

choice-of-law provisions unless the law of the chosen forum contravenes strong public policy."

*Mazzoni Farms, Inc. v. E.I. Dupont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000).

Upon review of New Jersey law governing the interpretation of confidentiality and non-

competition agreements, the Court finds that New Jersey law does not contravene Florida's

strong public policy.   Additionally, Godwin and Ramer agree that New Jersey law applies to the

interpretation of the Agreement. (Doc. No. 3 at 7-8; Doc. No. 16 at 3).   Accordingly, the Court

will apply the law of New Jersey in its determination of whether Godwin has a substantial

likelihood of success on the merits of its claim that Ramer breached the Agreement.  *Trueblue,*

*Inc.*, 2010 WL 1223895, at *2 ("It is well established that when the parties to a contract have

indicated their intention as to the law which is to govern, it will be governed by such law in

accordance with the intent of the parties." (quoting *Dep't of Motor Vehicles for Use and Benefit*

*of Fifth Ave. Motors, Ltd. v. Mercedes-Benz of N. Am., Inc.*, 408 So. 2d 627, 629 (Fla. 2d DCA

1981))).

    Under New Jersey law, "[a] post-employment restrictive covenant is enforceable if the

terms of the covenant are reasonable in light of the totality of the circumstances."  *Nat'l*

*Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D. N.J. 2009) (citing *Solari Indus.*, 264

A.2d at 56).  New Jersey courts have developed a three-pronged test to determine whether a

post-employment restrictive covenant is reasonable, and therefore enforceable: "[t]he restrictive

covenant must: (1) be reasonably necessary to protect the employer's legitimate business

interests; (2) not cause undue hardship to the employee; and (3) not impair the public interest."

*Nat'l Reprographics, Inc.*, 621 F. Supp. 2d at 222-23.  Additionally, a post-employment

6

covenant will not be enforced beyond the geographical area and time period needed to protect the employer's practice. *Id.* (citing *Karlin v. Weinberg*, 390 A.2d 1161, 1169 (N.J. 1978)). However, "even if the covenant is found enforceable, it may be limited in its application concerning its geographical area, its period of enforceability, and its scope of activity." *Corskey's Television & Radio Sales and Serv., Inc. v. Foti*, 602 A.2d 789, 793 (N.J. Super. 1992).

In the instant Agreement, Ramer covenanted not to compete with Godwin during his employment and for two years following the termination of his employment by (1) working for one of Godwin's competitors or engaging in any business in competition with Godwin, (2) soliciting Godwin's current and prospective clients on behalf of any business similar to that engaged in by Godwin, and (3) soliciting any Godwin employee that was retained by Godwin during the six months preceding Ramer's termination of employment.  (Doc. No. 1-1 at ¶ 2.1-2.3).[8]  Ramer further covenanted to keep confidential all confidential information he learned while working for Godwin.[9]  *Id.* at ¶ 1.3.

a.   Legitimate Business Interests

Godwin argues that the non-competition, non-solicitation, and confidentiality restrictions of the Agreement are reasonably necessary to protect Godwin's legitimate business interests considering that Ramer's position with Godwin afforded him access to "substantial confidential

---

[8]Also in the Agreement, Ramer acknowledged that a breach or threatened breach of the Agreement would cause irreparable injury to Godwin and that Godwin has the right to have the Agreement specifically enforced in the event of a breach or threatened breach.  *Id.* at ¶ 3.1.

[9]Confidential Information as defined in the Agreement is listed *supra* at note 3.

business information," Ramer is currently employed by Godwin's competitor, and Ramer has "already reached out to Godwin's employee and customers."[10]  (Doc. No. 3 at 9).  Ramer sets forth two arguments in response to Godwin's contention that the Agreement protects legitimate business interests.  First, Ramer contends that Godwin has no legitimate business interest in restricting Ramer's ability to compete with Godwin, because New Jersey does not recognize a legitimate business interest in restricting competition.  Second, Ramer claims that the confidential information that Godwin seeks to protect through the enforcement of the confidentiality restrictions of the Agreement is not a legitimate business interest, because the information is deemed non-confidential by the Agreement[11] or is non-confidential because it is generally available to the public.  (Doc. No. 16 at 6).  The Court will address each of Ramer's arguments in turn.

First, Ramer's contention that Godwin has no legitimate business interest in restricting Ramer's post-employment competition is incorrect.  New Jersey courts do recognize a legitimate business interest in a post-employment restrictive covenant that is "designed to protect [a

---

[10]Godwin asserts that Ramer has met with a Godwin client, the Mosaic Company, on behalf of NPC.  (Doc. No. 3 at 5).  In response to this assertion, Ramer claims that although NPC has made contact with the Mosaic Company since Ramer's employment with NPC, Ramer did not violate the Agreement because he did not, during the course of his employment with Godwin, have any contact with the Mosaic Company.  (Doc. No. 15 at ¶ 17).  Godwin also claims that Ramer "directly contacted a current Godwin employee to solicit him to leave Godwin and to work for NPC."  (Doc. No. 1 at ¶ 42).

[11]Ramer cites provision 1.4 of the Agreement, which states that confidential information does not include information "(a) already generally available to the public; (b) obtained by Employee in a manner not in violation of any obligation of confidentiality under this Agreement; (c) information that is already known to Employee as of the date of signing this Agreement; or (d) information required to be divulged in any legal or administrative proceeding in which Employee is involved."  (Doc. No. 1, Exh. A at ¶ 1.4).

company's] proprietary and confidential information, as well as its relationships with customers." *Nat'l Reprographics, Inc.*, 621 F. Supp. 2d at 226.  This includes an employment agreement that restricts an employee's ability to work for his former employer's competitors for a certain period of time after termination of his employment.  *Id.*; *see also Platinum Mgmt., Inc.*, 666 A.2d at 1038-39.  The Agreement's non-competition provisions were designed to protect Godwin's confidential information and customer relationships.  By entering into the Agreement, Godwin and Ramer recognized the importance of the confidential information Ramer would obtain and the customer relationships Ramer would develop during his employment with Godwin.  In order to protect that information and those relationships, Godwin has a legitimate business interest in restricting Ramer's right to compete with Godwin for two years after Ramer's termination.

Second, Ramer contends that the identity of Godwin's customers[12]  and Godwin's pricing lists[13] are available to the public, and therefore are not legitimate business interests.  Ramer relies on Section 1.4 of the Agreement, which states that "Confidential Information does not include . . . [information] already generally available to the public."  However, the Agreement protects much more than customer identities and pricing lists.  Godwin seeks to protect confidential

---

[12]Ramer contends that the identity of Godwin's customers is available to the public because (1) there are a finite number of customers in the area, (2) some of Godwin's customers must apply for permits for their projects and those permit applications are available online, and (3) Godwin's pumps are identifiable by their bright orange color so "[a]nyone who drives by a construction site and sees bright orange pumps is aware that the owner of that site is a Godwin customer."  (Doc. No. 16 at 8-9; Ramer Aff. at ¶ 32).

[13]Godwin contends that only pricing regarding its government bids is available to the public, and that its pricing regarding private entities is not disclosed to the public.  (Doc. No. 21 at 3).

information consisting of:

> [I]nformation relating to the identities of its customers and customer contacts and
> those of prospective customers; the identity, authority and responsibilities of key
> contacts at each customer and prospective customer; the contents of customer or
> consultant contracts, current and anticipated customer requirements or bids;
> financial information, including . . . internal records, files, rent rolls, ledger, profit
> and loss statements and fiscal reports; manufacturing, inventions, engineering and
> research and development; computer software programs; internal memoranda and
> other office records; and pricing, policies, price lists, market studies, business
> plans, operational methods, marketing plans or strategies.

(Doc. No. 3 at 3).

"Under New Jersey law, to be judicially protected, misappropriated information need not

rise to the level of the usual trade secret, and indeed, may otherwise be publicly available."

*Platinum Mgmt., Inc.*, 666 A.2d at 1039.  "The key to determining the misuse of the information

is the relationship of the parties at the time of disclosure, and its intended use."  *Id.*  New Jersey

courts have ruled that knowledge regarding current customer relationships, customer buying

habits, marketing plans, and sales projections, is a protectable legitimate business interest.  *See*

*Nat'l Reprographics, Inc.*, 621 F. Supp. 2d at 226-27; *Whitmyer Bros., Inc. v. Doyle*, 274 A.2d

577, 581 (N.J. 1971); *Platinum Mgmt., Inc.*, 666 A.2d at 1038-39.

The information Godwin seeks to protect through enforcement of the Agreement is a

legitimate business interest.  Although some of Godwin's customer identities and pricing lists

may be available to the public, the vast majority of information that Godwin seeks to protect is

confidential and thus a legitimate business interest.  In his position as Sales Engineer/Sales

Representative for Godwin, Ramer gained confidential knowledge regarding Godwin's

customers.  Moreover, by entering into the Agreement with Godwin, Ramer recognized that

information he would obtain during his tenure at Godwin was confidential.  Accordingly, the

Court finds that Godwin has a legitimate business interest in protecting the confidential information listed in the Agreement.

Although Godwin has a legitimate business interest in both protecting its confidential information and restricting Ramer's post-employment competition, the geographic scope of the non-competition provision of the Agreement is unreasonable and must be modified.  "The geographic scope of a non-competition provision must be narrowly tailored to ensure the provision is no broader than necessary to protect the employer's interests." *National Reprographics, Inc.*, 621 F. Supp. 2d at 224.  The Court has the authority to modify the Agreement.  *See Corskey's*, 602 A.2d at 793 ("even if the covenant is found enforceable, it may be limited in its application concerning its geographical area, its period of enforceability, and its scope of activity").

As written, the Agreement prohibits Ramer from competing with Godwin for two years after termination of his employment, but fails to limit the geographic area in which Ramer may not obtain competitive employment or engage in a competitive business.  (Doc. No. 1, Exh. A at ¶ 2.1). The non-competition provision of the Agreement, Section 2.1, must be modified so that the geographical area upon which Section 2.1 is enforceable is narrowed.  As provided by Godwin, Ramer served customers in Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties.  (Doc. No. 1 at ¶ 16).  Accordingly, the non-competition provision of the Agreement, Section 2.1, should be narrowed to those counties and an area within a 50-mile radius of Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties.  *See National Reprographics, Inc.*, 621 F. Supp. 2d at 224 (finding that a non-competition provision's 50-mile radius is not unreasonable).

11

b.      Undue Hardship

"An employee must show more than mere "personal hardship" for the court to find an

undue hardship would exist if a particular non-competition restriction is enforced."  *Id.* at 228

(citing *Karlin*, 390 A.2d at 1166).  In considering whether undue hardship is likely, courts should

look to "the likelihood of the employee finding work in his field elsewhere" and "the reason for

the termination of the employment agreement between the parties."  *National Reprographics,*

*Inc.*, 621 F. Supp. 2d at 228 (citations omitted).

The Agreement does not cause undue hardship to Ramer.  Ramer was not forced to leave

Godwin; but instead voluntarily resigned.  Additionally, the Agreement as modified to include a

geographic limit, does not impose any limitations on Ramer's ability to work for a competing

business outside of the 50-mile radius from Polk, Hillsborough, Pasco, Hernando, Citrus,

Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties.[14]  Moreover, Ramer voluntarily

entered into the Agreement when he chose to accept Godwin's offer of employment.

Accordingly, enforcement of the Agreement, as modified, will not cause undue hardship to

Ramer.

c.      Public Interest

"If a restrictive employment agreement will be injurious to the public, it will not be

enforced."  *Id.* at 229 (citing *Karlin*, 390 A.2d at 1168).  "'The public has a clear interest in

safeguarding fair commercial practices and in protecting employers from theft or piracy of . . .

---

[14]Additionally, the Agreement only restricts Ramer from working for companies or
starting a company that directly competes with Godwin.  In fact, the Agreement states that the
non-competition provision "is not intended to prevent employment in the general rental or
trenching industries."  (Doc. No. 1, Exh. A at ¶ 2.1).

confidential information, or, more generally, knowledge and technique in which employer may

be said to have a proprietary interest.'" *Id.* (quoting *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d

879, 894 (N.J. 1988)).   "The public interest favors the enforcement of reasonable terms

contained in employment contracts."  *Id.*  The public interest will not be impaired if Ramer is

enjoined from violating the Agreement, as modified by the Court.

      2.     *Violation of the Florida Uniform Trade Secrets Act (Count II)*

"Under Florida's Uniform Trade Secrets Act, a trade secret consists of information that

(1) derives economic value from not being readily ascertainable by others and (2) is the subject

of reasonable efforts to maintain its secrecy."  *Levenger Co. v. Feldman*, 516 F. Supp. 2d 1272,

1286 (S.D. Fla. 2007) (citing Fla. Stat. § 688.002).  Information that is generally known or

readily accessible to third parties does not qualify for trade secret protection.  *Id.*  To establish a

breach of FUTSA, a plaintiff must prove that: "(1) the plaintiff possessed secret information and

took reasonable steps to protect its secrecy, and (2) the secret information was misappropriated,

either by one who knew or had reason to know that the secret was improperly obtained or by one

who used improper means to obtain it."  *Del Monte Fresh Produce Co. v. Dole Food Co., Inc*.,

136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

Godwin asserts it has a substantial likelihood of success on the merits of its claim that

Ramer violated FUTSA, because Ramer possesses a removable storage device that contains

Godwin company materials.  (Doc. No. 3 at 14-15).  Although Ramer admits that he failed to

return a flash drive containing Godwin company materials that he "regularly copied throughout

[his] tenure with Godwin," Godwin has not shown the Court that Ramer possesses Godwin's

trade secrets.  (Ramer Aff. at ¶ 14).  Godwin only asserts that Ramer "connected various

removable devices to his Godwin-issued laptop and copied onto them information belonging to

Godwin, including information pertaining to Godwin's customers."  (Doc. No. 3 at 15).  Godwin

does not provide the Court with any evidence or even any explanation as to what information

Ramer copied to the various removable devices.  Based on the lack of evidence and explanation

as to what is contained on the removable storage devices, Godwin has not demonstrated a

substantial likelihood of success on the merits as to its claim that Ramer violated FUTSA.

Accordingly, the Court will address the remaining prerequisites for the issuance of a preliminary

injunction only as to Godwin's claim that Ramer breached the Agreement.

> **B.**     **Irreparable Harm**

The threat of economic loss alone does not justify a preliminary injunction.  However,

the "loss of customers and goodwill is an irreparable injury."  *BellSouth Tellecomms., Inc. v.*

*MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (citing *Ferrero*

*v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991)).

Ramer was employed by Godwin as a Sales Engineer/Sales Representative, and his

primary job responsibilities included supporting Godwin's existing customers and developing

business opportunities with current and prospective customers.  Ramer resigned from Godwin

and currently works for Godwin's competitor, NPC.  Moreover, Godwin alleges that Ramer has

solicited one of Godwin's customers and one of Godwin's employees on behalf of NPC.  Absent

a preliminary injunction, Godwin faces a potential loss of customers while Ramer is employed

by NPC.  Accordingly, Godwin faces irreparable injury if Ramer is not preliminarily enjoined

from violating the Agreement, as modified to include the 50-mile radius geographic limitation.

Furthermore, the Court notes that in the Agreement, Ramer acknowledges that a breach of the

14

Agreement would cause irreparable injury to Godwin. (Doc. No. 1, Exh. A at ¶ 3.1).

### C. Balance of the Harms

Godwin argues that the balance of harms favors a preliminary injunction against Ramer, because Ramer has firsthand knowledge of Godwin's confidential, proprietary information, Ramer currently works for NPC, a competitor, and Ramer has solicited at least one of Godwin's employees to come to work for NPC. The Court recognizes that Ramer will be harmed to the extent that he will be unable to work for a Godwin competitor located within a 50-mile radius from Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties. However, the Court finds that the harm to Godwin if the Court fails to enter a preliminary injunction is greater than the harm to Ramer if the Court does enter the preliminary injunction.

### D. Public Interest

Godwin contends that an issuance of a preliminary injunction in its favor will not disserve the public interest, because such an injunction will only affect Ramer and Godwin.[15] Ramer argues that "an injunction would disserve the public in that it would allow an employer to breach an agreement with its employee without consequence to the enforceability of its other dependent agreements with the employee." (Doc. No. 16 at 16). However, as the Court noted, Ramer has not provided evidence of a breach of that alleged compensation agreement. Accordingly, the issuance of the injunction would not violate the public interest.

### III. Conclusion

The Court finds that Godwin has shown that (1) it has a substantial likelihood of success

---

[15]The Court notes that an injunction would also affect Ramer's current employer, NPC.

on the merits of its claim that Ramer breached the Agreement; (2) that it will suffer irreparable harm if the injunction is not issued; (3) that the threatened injury to Godwin outweighs whatever damage an injunction may cause to Ramer; and (4) the injunction will not disserve the public interest.

Accordingly, Godwin's motion for preliminary injunction (Doc. No. 3) is GRANTED IN PART AND DENIED IN PART.  It is ordered and adjudged that:

1. The motion for preliminary injunction is granted to the extent that Ramer is enjoined from violating the Agreement, as modified by the Court so that the geographical area upon which Section 2.1, the non-competition provision of the Agreement, is enforceable is Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties and the area within a 50-mile radius of those counties. Specifically, Ramer is enjoined from (1) working on behalf of Godwin competitors, including NPC, in Polk, Hillsborough, Pasco, Hernando, Citrus, Marion, Gilchrist, Manatee, Sarasota, and Pinellas counties and the area within a 50-mile radius of those counties; (2) soliciting Godwin employees or customers on behalf of a competitor of Godwin; and (3) disclosing Godwin's confidential information as defined in the Agreement.

2. The motion for preliminary injunction is denied on the grounds that Ramer violated Florida's Uniform Trade Secrets Act.

**DONE AND ORDERED** at Tampa, Florida, this 8th day of July, 2011.

16

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge